UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

COURTNEY GREEN,           :
                                  :             Civil Action No.
       Plaintiff,          :             3:18-CV-960 (CSH)
                                  :
                                  :
       v.                    :
                                  :
KITCHEN MANAGER ART RIFFO,  :             MAY 29,  2019
KITCHEN SUPERVISOR DOWNEY,  :
                                  :
       Defendants.        :

## <u>INITIAL REVIEW ORDER</u>

**Haight, Senior District Judge:**

Plaintiff Courtney Green, currently incarcerated at Osborn Correctional Institution ("Osborn") in Somers, Connecticut, has filed a *pro se* complaint under 42 U.S.C. § 1983 against Osborn employees Art Riffo, Kitchen Manager, and Downey, Kitchen Supervisor (herein "Defendants"). *See* Doc. 1, at 1; Doc. 1-1, at 13 (¶¶ 1-3). In his Complaint, Plaintiff asserts two claims. First, he alleges that Defendants retaliated against him for complaining about their failure to provide him with a high fiber diet. In so doing, he alleges that they violated his right to free speech under the First Amendment. Doc. 1-1, at 19. Second, Plaintiff alleges that Defendants subjected him to "cruel and unusual punishment" under the Eighth Amendment by failing to provide him with a high fiber diet. *Id.,* at 20. For the reasons set forth below, the Court will dismiss the Complaint in part.

## I.      STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against governmental actors and "dismiss . . . any portion of the complaint [that] (1) is frivolous,

malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a), (b)(1)-(2). Although highly detailed allegations are not required, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64. When "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). Consequently, "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*)). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same)*; Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly,* though, we remain obligated to construe a *pro se* complaint liberally.") (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). Nor may the Court "invent factual allegations" that the plaintiff has not pleaded. *Id.*

## II.     FACTUAL ALLEGATIONS

When reviewing a complaint to determine whether it states any "plausible" claim under *Iqbal*, the court accepts the factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996) (citing *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994), *cert. denied*, 513 U.S. 836 (1994)). For purposes of

screening, the facts set forth in Plaintiff's complaint are accepted as true.

In January 2017, Plaintiff began employment at Osborn as a second shift kitchen worker. Doc. 1-1, at 16 (¶ 9). Plaintiff's work shift in the kitchen was from 12:30 p.m. to 6:00 p.m. *Id.* Defendant Downey was a first shift kitchen supervisor at Osborn and held the rank of CFSS2. *Id.;* Doc. 1, at 3. Downey's shift usually ended between 12:30 p.m. to 12:45 p.m. Doc. 1-1, at 16 (¶ 9). Plaintiff rarely came in contact with Downey unless Downey worked overtime during the second shift. *Id.* Defendant Riffo was the Kitchen Manager at Osborn and held the rank of CFSS3. Doc. 1, at 3; Doc. 1-1, at 13 (¶2).

On July 28, 2017, Plaintiff filed a Level 1 Grievance complaining that Kitchen Supervisor Wilcox had instructed an inmate to "continue to serve bread off of a bread rack" to the general inmate population "after finding a roach in it." Doc. 1-1, at 1-2. Plaintiff also complained that on another occasion, Wilcox had ordered an inmate to serve the general prison population juice "after being told and seeing for himself" that there were "rodent droppings on multiple racks of juice." *Id.* Plaintiff requested that Riffo and Wilcox comply with Administrative Directive 10.18 and "stop putting" the health of inmates in the prison population "at risk [due] to unsafe and unsanitary conditions."[1] *Id.,* at 2.

On September 29, 2017, Acting Warden Rodriguez denied Plaintiff's grievance, stating that the grievance was "filled with vague and unsubstantiated allegations" and "failed to provide any supporting documentation." *Id.* Subsequently, on December 4, 2017, a district administrator denied Plaintiff's appeal of the grievance, stating that "[i]nmate meals are prepared, delivered,

---

[1] The Court takes judicial notice that Administrative Directive 10.18 of the Connecticut Department of Correction is entitled, "Nutrition and Food Services" and discusses "Sanitation" at paragraph 6, mandating, *inter alia*, that food service be "maintained at a high level of

4

and served in accordance with Administrative Directive 10.18 Food Services." *Id.*, at 3.

On September 22, 2017, Dr. Breton prescribed Plaintiff a high fiber diet because he suffered from a "chronic anal fissure." *Id.,* at 14 (¶ 3). At one meal on November 27, 2017, Kitchen Supervisor Downey instructed a kitchen worker to serve Plaintiff hot dogs. *Id.* (¶ 1). Plaintiff "thought that hot dogs were in contrast to his high fiber diet." *Id.* (¶ 2). Plaintiff then inquired of Downey whether he was aware of an October 2017 revision in the high fiber diet (to be served to inmates within the Department of Correction), which eliminated "sausages of any sort." *Id.* Plaintiff alleges that Downey responded by instructing Plaintiff to "take the hot dog tray and go." *Id.*

On November 28, 2017, Plaintiff wrote to Riffo and also met with Dr. Breton regarding his high fiber diet. *Id.* (¶¶ 1, 3). In his letter to Riffo, Plaintiff indicated that during "first shift on Tuesdays (training days), [he had] not [been] receiving his therapeutic high fiber diet." *Id.* (¶ 1). Plaintiff also informed Riffo that Downey had instructed a kitchen worker to serve Plaintiff hot dogs as part of his meal on November 27, 2017. *Id.*

During his appointment with Dr. Breton, Plaintiff indicated that he had not been receiving his high fiber diet on Tuesdays for the last two months. *Id.* (¶¶ 3-4). Plaintiff complained that the lack of a high fiber diet on these days had "exacerbat[ed] his chronic anal fissure by causing him [to experience] constipation, pain and bleeding from his rectum." *Id.* (¶ 4). After meeting with Plaintiff that day, Dr. Breton sent an email to Riffo, Health Services Administrator Richard Furey, and Dr. Castro, informing them that during Plaintiff's first shift on Tuesdays, that is the "only time" he is receiving a "regular tray" instead of being given his high

cleanliness."

5

fiber diet.  *Id.*, at 10, 15 (¶ 5).

On November 29, 2017, Plaintiff cut his right thumb during his shift in the kitchen.  *Id.,* at 16 (¶ 11).  On November 30, 2017, a prison official issued Plaintiff an out-of-work pass for five days, November 30 to December 4, 2017.  *Id.*, at 5, 16 (¶ 11).  Plaintiff was not scheduled to return to work until second shift on December 4, 2017.  *Id.,* at 16 (¶ 12).

On December 4, 2017, Downey arrived in Plaintiff's housing unit with a CN100101 performance evaluation form and instructed Plaintiff that he must sign the form or be "terminated from his kitchen job with malice."  *Id.,* at 15 (¶ 6).  The evaluation referenced Plaintiff's November 27, 2017, complaint to Downey about receiving hot dogs, an item that Plaintiff believed was not part of his high fiber diet.  *Id.*  Plaintiff refused to sign the evaluation because it was not based on his work attendance, work performance, or the relevant Administrative Directives.[2]  *Id.* (¶ 7).  Downey then informed Plaintiff that he was terminated from his kitchen job for refusing to sign the evaluation.  *Id.*  As a result of his negative evaluation on the CN100101 form, Plaintiff was precluded from earning Risk Reduction Earned Credit ("RREC"), increments of time off of his prison sentence.  *Id.*, at 16 (¶ 13).

Plaintiff asserts that he has been incarcerated since July 25, 2008, and has remained disciplinary report free since April 2009.  *Id.,* at 15 (¶ 8).  Until the issuance of the negative performance evaluation (CN100101) by Downey on December 4, 2017, Plaintiff had never received a negative performance evaluation (CN100101) regarding a job performed during his confinement within the Department of Correction.  *Id.*

Shortly after Downey issued the negative work evaluation, Plaintiff wrote to Riffo via

---

[2] In his Complaint, Plaintiff references Administrative Directive 10.1(5), which pertains

"inmate request." *Id.,* at 17 (¶ 18). Plaintiff stated that, rather than being related to work performance, the reason Downey had written the evaluation was because Plaintiff had complained to Riffo about Downey serving Plaintiff hot dogs. *Id.* Riffo did not respond to Plaintiff's request. *Id.* Plaintiff asserts that "[u]pon information and belief," Riffo, as Downey's supervisor, must have "approved of and signed" the poor work evaluation Downey issued to Plaintiff. *Id.*, at 18 (¶ 19).

On December 11, 2017, Plaintiff filed a Level 1 Grievance stating that he had written to Riffo on November 28, 2017, regarding the fact that during first shift on Tuesdays, he was not receiving his high fiber diet. *Id.,* at 16 (¶ 10). In that grievance, he also wrote that during a meal on November 27, 2017, Downey had given him hot dogs, and on December 4, 2017, Downey had issued him a poor performance evaluation (CN100101). *Id.*; *see also id.*, at 8-9.

On January 30, 2018, Warden Faneuff denied Plaintiff's Level 1 Grievance because Plaintiff's "allegations against Kitchen Supervisor Downey [were] unsubstantiated." *Id.*, at 9. In particular, Plaintiff had failed to provide evidence to substantiate his allegations that Downey had issued the poor evaluation in retaliation for Plaintiff's letter to Riffo. *Id.* Warden Faneuff also informed Plaintiff that "the determination was made that it would be in the best interest to reclassify [him] to a 2nd shift hallway worker [position] (a job [Plaintiff had] agreed would work out for [his] interests)." *Id.*

On March 12, 2018, Administrative Remedies Coordinator Kopacz sent Plaintiff a letter indicating that after reviewing the work performance evaluation issued by Downey, Kopacz and Warden Faneuff agreed that although Plaintiff's behavior regarding his diet had been "a little

---

to "Inmate Assignment and Pay Plan"– "General Assignment and Pay." Doc. 1-1, at 15 (¶ 7).

brash," it did not warrant a work evaluation of "overall poor." *Id.,* at 4, 17 (¶¶ 15-16). Moreover, his actions (for which he received the evaluation) "were not job related." *Id.* Kopacz and Faneuff thus reclassified Plaintiff's evaluation as "without malice." *Id.,* at 4, 17 (¶ 16). In accordance with their agreement with Plaintiff regarding reclassification without malice, Plaintiff started his 2ⁿᵈ shift hall worker position immediately. *Id.*, at 4. Moreover, it was agreed that the negative work report "would not be used to negatively impact [Plaintiff's] Classification status or his Ability to earn RREC time." *Id.* (capitalization in original). In return, Green withdrew his two requests for administrative remedies. *Id.*

### III. DISCUSSION

Plaintiff alleges that Riffo and Downey issued him a poor work evaluation in retaliation for his complaints about not receiving a high fiber diet. He alleges that this negative evaluation violated his First Amendment right to free speech. In addition, Plaintiff alleges that Defendants violated his Eight Amendment right to be free of "cruel and unusual punishment" by depriving him of his prescribed high fiber diet. Finally, Plaintiff alleges that Downey and Riffo precluded him from earning RREC to reduce his sentence. For all of these alleged wrongs, Plaintiff seeks monetary damages from Defendants in their individual capacities.

#### A. First Amendment

With respect to his First Amendment claim, Plaintiff alleges that on November 27, 2017, he complained directly to Downey about not receiving a proper "high fiber" meal that day. Doc. 1-1, at 14 (¶ 2.) On November 28, 2017, Plaintiff wrote to Riffo regarding the fact that on each Tuesday during the prior two months, he had received one meal that did not comply with his prescribed high fiber diet. *Id.* (¶ 1). He also mentioned that at one meal on November 27, 2017,

Downey had served him hot dogs, a food item that he did not believe was part of his high fiber diet. *Id.* Approximately one week later, Downey issued Plaintiff a poor work evaluation which mentioned Plaintiff's complaint about receiving hot dogs but failed to address Plaintiff's work performance. *Id.*, at 15 (¶ 6). When Plaintiff refused to sign the evaluation, he lost his job. *Id.* (¶ 7). Plaintiff contends that Riffo and Downey retaliated against him for exercising his right to free speech.[3]

To state a claim for First Amendment retaliation, "a prisoner must show '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Burns v. Martuscello*, 890 F.3d 77, 84 (2d Cir. 2018) (quoting *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015)).

The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act." *Dolan*, 794 F.3d at 295 (citation and internal quotation marks omitted). However, even exercising the suggested caution, the Court finds that the filing of an inmate request or grievance is protected activity. *Id.* at 294. "It is well established that 'retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under [42 U.S.C.] § 1983.'" *Id.* (quoting *Graham v.*

---

[3] The Court notes that, by way of background, Plaintiff alleges that Riffo "always had a disdain for [him]" after Plaintiff informed Warden Weir that "the kitchen at Osborn is unsanitary under defendant Riffo's management." Doc. 1-1, at 17(¶ 14) (referencing Doc. 1-1, at 2).

*Henderson,* 89 F.3d 75, 80 (2d Cir. 1996) and citing *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir. 2004) ("[Plaintiff] has sufficiently alleged . . . participation in protected activity: the use of the prison grievance system.")). *See also Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir. 1988) (The "intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy.") (citation, internal quotation marks, ellipsis, and brackets omitted). Courts within the Second Circuit have concluded that an "[i]nmate's verbal complaints to corrections officers and prison officials have also been found to constitute activity protected by the First Amendment." *Guillory v. Haywood*, No. 9:13-CV-01564 (MAD), 2015 WL 268933, at *18 (N.D.N.Y. Jan. 21, 2015) (collecting cases). Thus, Plaintiff has plausibly alleged that he engaged in protected speech when he wrote to Riffo and verbally complained to Downey about not receiving a high fiber diet.

Within a week of complaining about not receiving a high fiber diet, Downey issued Plaintiff a poor work evaluation that Plaintiff alleges, upon information and belief, Riffo had "signed and approved" as Downey's supervisor.[4] Doc. 1-1, at 18 (¶ 19). Plaintiff refused to sign the evaluation because it was not related to his work attendance or work performance; and Downey terminated him from his job. *Id.*, at 15 (¶¶ 6-7). Although Warden Faneuff reclassified Plaintiff to a new job as of March 12, 2018, Plaintiff alleges that he could not earn RREC during the time that he was not working and/or because he had received a poor work evaluation. *Id.*, at

---

[4] Plaintiff thus alleges that Riffo had direct involvement in the adverse action of terminating him from his kitchen employment because of his complaints about his high fiber diet. *See, e.g., Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002) (To state a claim against a supervisory official, the plaintiff must allege a causal link between the conduct of the supervisory official, or lack thereof, and the injury.); *Merriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) ("[S]upervisory liability may be imposed when an official has actual or constructive notice of unconstitutional practices and demonstrates 'gross negligence' or

16 (¶ 13).  At the pleading stage, construing the Complaint liberally, the Court concludes that Plaintiff has plausibly alleged that Riffo and Downey took adverse action against him and that the adverse action was related to his complaints about not receiving his high fiber diet.  The First Amendment retaliation claim will proceed against Riffo and Downey in their individual capacities.

**B.      Eighth Amendment**

As discussed above, the Defendants oversee the meals that are prepared and served to inmates confined at Osborn.  The Court evaluates Plaintiff's Eighth Amendment claim as a claim of deliberate indifference to health and/or to serious medical needs.

In general, in the context of a prisoner's conditions of confinement, those conditions that are "restrictive or even harsh" do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs . . . or the minimal civilized measure of life's necessities." *Id.*

To state a claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element.  To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a basic life necessity or "a substantial risk of serious harm" to his health.  *Farmer v Brennan*, 511

'deliberate indifference' by failing to act.") (citation omitted).

U.S. 825, 834 (1994). The Supreme Court has identified the following basic human needs of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,* 452 U.S. at 348. In *Wilson*, the Supreme Court observed that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need . . . ." 501 U.S. at 304 (emphasis and citations omitted).

To meet the subjective element, the inmate must allege that the defendant prison officials possessed culpable intent – that is, the officials knew that the inmate faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *Farmer*, 511 U.S. at 834, 837. The subjective element requires that the inmate demonstrate that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006) (citing *Farmer,* 511 U.S. at 839-40). "But recklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent." *Id.* (citing *Farmer*, 511 U.S. at 835-37).

With respect to inmates' diet, the "Eighth Amendment requires 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.'" *Willey v. Kirkpatrick*, 801 F.3d 51, 69 (2d Cir. 2015) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (*per curiam*)). Courts have held that the intentional failure to provide an inmate with a medically prescribed or

nutritionally adequate diet for a week or more may state a viable Eighth Amendment claim. *See, e.g., Willey*, 801 F.3d at 57, 69 (holding inmate's allegation that for one week before a hearing on a misbehavior report prison officials served him an "unusually unhealthy" diet of mostly stale bread and rotten cabbage was sufficient to state a facially plausible claim under the Eighth Amendment); *Salgado v. DuBois*, No. 17-CV-6040 (NSR), 2019 WL 1409808, at *6 (S.D.N.Y. Mar. 28, 2019) (Allegations that for over five months, plaintiff "was on a nutritionally inadequate restricted diet" which included "small-portioned and unsanitary meals [consisting of] rotting and insect-infested food" and caused plaintiff to lose "over fifty pounds in less than five months and experience[] stomach pains, nausea, vomiting, diarrhea, migraine headaches, and emotional distress" stated a "facially plausible" Eighth Amendment claim.).

Courts have also recognized that "[t]he denial of a medically pr[e]scribed diet may constitute an Eighth Amendment violation under certain circumstances." *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 180 (N.D.N.Y. 1996) (collecting cases). *See, e.g., Mandala v. Coughlin*, 920 F. Supp. 342, 355 (E.D.N.Y. 1996) (denying summary judgment because issue of material fact existed with regard to deliberate indifference prong of Eighth Amendment standard based on inmate's allegations that prison officials ignored or refused to respond to his repeated requests – for more than a year after undergoing major abdominal surgery (colostomy) – to obtain a medically necessary diet to heal properly); *Robles v. Coughlin,* 725 F.2d 12, 15-16 (2d Cir. 1983) (plaintiff inmates' allegations held sufficient to withstand *sua sponte* dismissal where they alleged that prison officials contaminated their meals with "dust, rocks, glass and human waste'"); *Johnson v. Harris,* 479 F. Supp. 333, 336-37 (S.D.N.Y. 1979) (finding deliberate indifference to serious medical needs (Eighth Amendment violation) by prison physician and

prison officials where they failed to provide diabetic inmate with medically appropriate diet for at least nine months, resulting in his declining health).

However, in this context of Eighth Amendment claims, it remains true that "[m]ere negligence or inadvertent failure to provide a medically necessary diet is not a constitutional violation." *Abdush-Shahid*, 933 F. Supp. at 180. Rather, "'[d]eliberate indifference' must be demonstrated by proof that corrections personnel intentionally denied, delayed access to, or interfered with the prescribed treatment." *Id.* (quoting *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976)).[5]

In the case at bar, Plaintiff alleges that on September 22, 2017, Dr. Breton prescribed a high fiber diet for him because he suffered from a "chronic anal fissure." Doc. 1-1, at 14 (¶ 3). Plaintiff states that during the following two months, on each Tuesday, he did not receive a meal that complied with his prescribed high fiber diet; and on November 27, 2017, a Monday, Downey served him hot dogs, a food that he did not think was on the high fiber diet. *Id.* (¶¶ 1-4). Plaintiff does not indicate whether he ate the hot dogs Downey served him on November 27, 2017.

On November 28, 2017, Plaintiff complained to Dr. Breton that he received one meal each Tuesday during the prior two months that did not contain high fiber foods, which had exacerbated his anal fissure and had caused him to suffer symptoms including "constipation, pain and bleeding from the rectum." *Id.* (¶¶ 3-4). With respect to "serious medical needs," a condition is considered serious if "a reasonable doctor or patient would find [it] important and

---

[5] Under *Estelle v. Gamble,* prison officials violate the Eighth Amendment if they are deliberately indifferent to an inmate's serious medical needs by denying or delaying his access to medical care or by intentionally interfering with his treatment. 429 U.S. at 104-05.

worthy of comment or treatment," the condition "significantly affects an individual's daily activities," or if it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation and internal quotation marks omitted). Depending on the severity of his symptoms, Plaintiff's allegations that he suffered pain and bleeding may plausibly allege an objectively serious risk of harm to his health from exacerbation of his anal fissure from ingesting a low fiber meal once a week. *See e.g., Green v. Shaw*, No. 3:17-CV-00913 (CSH), 2019 WL 1427448, at *6 (D. Conn. Mar. 29, 2019) (holding hemorrhoids, rectal bleeding, or painful bowel movements did not constitute serious medical needs but suggesting that development of an anal fissure might constitute a serious medical need), *appeal filed*, 19-847 (April 3, 2019). *See also Adams v. Rock*, No. 9:12-CV-1400 (GLS/ATB), 2015 WL 1312738, at *9 (N.D.N.Y. Mar. 24, 2015) (suggesting that the severity of an anal fissure, including whether it could be resolved with "conservative treatment of topical lidocaine and sitz baths," might determine whether it amounts to a "sufficiently serious condition to support a claim that any defendant was deliberately indifferent to a serious medical need").

However, even assuming *arguendo* that the objective prong is met with respect to a serious medical need, the subjective element must be present. Specifically, "[t]he second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 280. "Subjectively, the defendant must have had actual awareness of a substantial risk that the inmate would suffer serious harm as a result of [his or] her conduct." *Green*, 2019 WL 1427448, at *5. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Abdush-Shahid*, 933 F. Supp. at 179 (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66-67 (2d Cir. 1994)). *See also Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (same) (quoting *Farmer*, 511 U.S. at 837). Consequently, mere negligence does not suffice. *Salahuddin*, 467 F.3d at 280.

In the case at bar, as to the subjective component, Plaintiff has failed to allege sufficient facts to establish that Downey and/or Riffo were deliberately indifferent to the condition of his anal fissure. He has alleged no facts to support a finding that either Downey or Riffo was aware of Plaintiff's particular medical condition. Plaintiff does not assert that when he confronted Downey on November 27, 2017, he explained about his medical condition or how it could be exacerbated by eating hot dogs (foods not high in fiber). Without knowing that Plaintiff suffered from a serious medical condition or that he might suffer a serious risk of harm to his health if he did not receive a high fiber diet, Riffo and Downey were not deliberately indifferent to Plaintiff's needs. Specifically, lacking knowledge of Plaintiff's medical condition, Defendants could not draw the inference that a substantial risk of serious harm existed. Consequently, no facts demonstrate that they drew such an inference.

Plaintiff alleges that in response to his assertion to Downey that the hot dogs served to him on November 27, 2017, were not part of the Department of Correction's high fiber diet, Downey simply directed Plaintiff to take his tray and leave. *See* Doc. 1-1, at 14 (¶ 2). Downey made no effort to confirm whether hot dogs met the definition of a high fiber food for purposes of the Department of Correction's high fiber diet. To the extent that Downey should have taken the time to investigate whether hot dogs were a high fiber food or should have been aware that

sausages had been removed from the high fiber diet, this conduct constitutes, at most, negligence, which is not actionable under the Eighth Amendment. *See Singh v.* Fuller, No. 93 Civ. 5937(CSH), 1999 WL 777872 at *3 (S.D.N.Y. Sep. 30, 1999) ("While an officer is more than merely negligent when he deliberately defies the express instructions of a prisoner's doctor, a claim which amounts to no more than an officer's 'inadvertent failure to provide a medically necessary diet does not state a claim for deliberate indifference.'") (citing *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) and quoting *Abdush-Shahid*, 933 F. Supp. at 180).

Furthermore, once Dr. Breton made the effort to explain to Riffo the problem that Plaintiff was not receiving his medically necessary high fiber diet on Tuesdays, the situation appears to have been remedied. Factually, Plaintiff alleges that after he wrote to Riffo on November 28, 2017, to complain that he had not received his high fiber meal on Tuesdays during first shift and that Downey had given him hot dogs on the previous day, Plaintiff met with Dr. Breton to express his concerns about not receiving his high fiber diet. *See* Doc. 1-1, at 14 (¶ 4). Later that day, Dr. Breton emailed Riffo, Dr. Castro and Health Services Administrator Furey to make them aware that Plaintiff had not been receiving a high fiber during first shift on Tuesdays (which was the only time he was not being given the high fiber diet), and to assert that this problem can be straightened out "fairly easily." *Id.*, at 10, at 15 (¶ 5). In other words, Dr. Breton took steps to eradicate the problem by suggesting that the individuals addressed in the email make sure that Plaintiff receives his high fiber meal on Tuesdays from that point forward. *Id.*

There are no allegations that following that email from Dr. Breton, the problem continued. Plaintiff does not allege that he did not receive high fiber meals that complied with the Department of Correction's high fiber diet after November 27, 2017. The Court concludes

17

that Plaintiff has failed to allege sufficient facts to state a plausible claim that either Downey or Riffo was deliberately indifferent to a risk of serious harm to Plaintiff's health. Plaintiff has failed to allege sufficient facts to make out the subjective component of his Eighth Amendment claim. Accordingly, that claim will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## C. Violation of Opportunity to Earn RREC

Plaintiff alleges that he could not earn RREC after he lost his job in the kitchen in December 2017. *See* Doc. 1-1, at 16 (¶ 13). In support of this allegation, Plaintiff attaches an Inmate Request that he submitted to a prison official at Osborn on February 1, 2018, in which he requested that a "lump sum [of] RREC" be applied to his sentence. *Id.,* at 11. In response, the reviewer indicated that Plaintiff did not meet the criteria for a lump sum award of RREC because he had received a negative work performance evaluation within twenty-four months of his request. *Id.* Plaintiff thus contends that Riffo and Downey violated his Eighth Amendment rights by precluding him from earning RREC. *Id.,* at 20 (¶ 25).

As indicated above, the Eighth Amendment protects an inmate from serious deprivations of basic life necessities or "a substantial risk of serious harm" to his or her health. *Farmer*, 511 U.S. at 834. A loss of RREC or inability to earn RREC does not constitute a condition of confinement or a deprivation of a basic human need or life necessity. Rather, RREC is a privilege that may be earned by an inmate. *See* State of Connecticut Department of Correction Administrative Directive 4.2A(3)(D) ("Risk Reduction Earned Credit (RREC). Time awarded at the discretion of the Commissioner of Correction or designee. Up to five (5) days per month. . . ."); *Id.* 4.2A(1)("RREC may be earned for participation in programs or activities, good conduct and obedience to departmental rules and behavior consistent with public safety and reentry to the

community, for eligible sentenced inmates"); *Id.* 4.2(4) (At the Commissioner's discretion, "RREC may be rescinded and/or an inmate may be excluded from earning RREC at any time").[6] The fact that Plaintiff may have been ineligible to earn RREC because of the poor work evaluation issued by Downey and Riffo does not deprive Plaintiff of a basic human need. Thus, Plaintiff has not met the objective prong to state an Eighth Amendment claim. That claim will be dismissed.[7]  *See* 28 U.S.C. § 1915A(b)(1).

Furthermore, in general, a claim regarding the length of one's sentence must be brought as a habeas claim. If an inmate earns RREC, the application of RREC to an inmate's sentence affects the overall duration of the inmate's confinement. *See* Admin. Dir.4.2A(4) ("RREC could affect an inmate's discharge date if in compliance."). Challenges to the duration of an inmate's confinement must be presented in a habeas petition pursuant to 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973) (habeas corpus was appropriate remedy for inmates seeking restoration of good-conduct-time credits which would shorten the length of their confinement in prison); *Jenkins v. Haubert*, 179 F.3d 19, 23 (2d Cir. 1999) (holding that "where the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only [habeas relief under 28 U.S.C.] § 2254(b) with its exhaustion requirement may be employed").

---

[6]  Administrative Directive 4.2A (effective 2/1/2016) is available at:
http://portal.ct.gov/DOC/AD/AD-Chapter-4 (last visited May 24, 2019).

[7]  The Court notes that even if Plaintiff could state a claim under the Eighth Amendment, that claim appears to be premature given that Plaintiff submitted his request for a lump sum award of RREC before he received the letter dated March 12, 2018, indicating that his work evaluation would not negatively impact his ability to earn RREC. It is unclear whether Plaintiff appealed the denial of the request for a lump sum award when the reviewer responded to the February 1, 2018 request, or whether Plaintiff submitted another request for a lump sum of RREC after receiving the letter on March 12, 2018.

The Court does not construe this action as a habeas petition where Plaintiff has neither demonstrated nor alleged that he has met the exhaustion requirement for filing a section 2254 petition. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

Furthermore, even if Plaintiff were to pursue a habeas claim on the basis of a purported liberty interest in RREC, that claim would fail. "In order . . . to qualify as a constitutionally protected liberty, . . . the interest must be one that is assured either by statute, judicial decree, or regulation." *Perez v. Comm'r of Correction*, 326 Conn. 357, 370 (2017). With respect to RREC, the awarded interest is strictly discretionary:

> The Connecticut legislature enacted Public Act 11–51, effective July 1, 2011, which makes available to inmates Risk Reduction Earned Credits ("RREC"). These *discretionary credits* may be applied if an inmate demonstrates good behavior and is in compliance with his Offender Accountability Plan. Application of RREC will reduce an inmate's sentence.

*Vega v. Rell*, No. 3:09-CV-737 (VLB), 2012 WL 1298678, at *1 (D. Conn. Apr. 16, 2012) (emphasis added). Thus, there is no "liberty interest in RREC" because "RREC has been created under state law" where the "commissioner is not required to make RREC available to all inmates; he has the discretion to make it available." *Id.* (citing *Abed v. Armstrong*, 209 F.3d 63 (2d Cir. 2000)). *See also Perez*, 326 Conn at 372 ("Although the legislature has provided

guidance to the [commissioner] as to how to exercise his discretion, [he] still has broad discretion to award or revoke risk reduction credit. As such, the statute does not support an expectation that an inmate will automatically earn risk reduction credit or will necessarily retain such credit once it has been awarded.").

## IV. CONCLUSION AND ORDERS

Having reviewed Plaintiff's claims pursuant to 29 U.S.C. §1915A, the Court enters the following orders:

(1)    The First Amendment retaliation claim will proceed against both Defendants in their individual capacities for damages.

(2)    The Eighth Amendment claim that Defendants deprived Plaintiff of a medically prescribed diet and the Eighth Amendment claim that the Defendants deprived Plaintiff of the opportunity to earn RREC are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

(3)    Within twenty-one (21) days of this Order, the Clerk shall verify the current work addresses of: Kitchen Manager/CFSS3 Art Riffo and Kitchen Supervisor/CFSS2 Downey and mail a copy of the Complaint, this Order, and a waiver of service of process request packet to each defendant in his individual capacity at his confirmed address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of each request.  If either Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)    Defendants Riffo and Downey shall file their responses to the Complaint, either an answer or motion to dismiss, within sixty (60) days after the date upon which the notice of

lawsuit and waiver of service of summons forms are mailed to them. If the Defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this Order. Discovery requests need not be filed with the Court.

(6)     All motions for summary judgment shall be filed within seven months (210 days) from the date of this Order.

(7)     The Clerk shall send a copy of the Complaint and this Order to Plaintiff and to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

IT is SO ORDERED.

Dated:  New Haven, Connecticut
          May 29, 2019


                              */s/Charles S. Haight, Jr.*
                              CHARLES S. HAIGHT, JR.
                              Senior United States District Judge