## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
COURTNEY GREEN                :    Civ. No. 3:18CV00960(SALM)
                              :
v.                            :
                              :
ART RIFFO and DOWNEY          :    January 10, 2022
                              :
------------------------------x
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Courtney Green ("plaintiff"), a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC"),[1] brings this action against defendants Art Riffo and Downey, both employees of DOC, pursuant to 42 U.S.C. §1983. Plaintiff contends that defendants Riffo and Downey retaliated against him in violation of the First Amendment to the United States Constitution. See Doc. #1-1 at 19-20.[2]

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut Department of Correction website, which reflects that Green is a sentenced inmate. See Inmate Information, Conn. State Dept. of Correction, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=3 20094 (last visited Jan. 7, 2022).

[2] Plaintiff asserted additional claims in the Complaint, but after initial review, only the First Amendment retaliation claim remains. See Doc. #10 at 21.

1

Pursuant to Federal Rule of Civil Procedure 56(a), both defendants move for summary judgment in a joint motion. See Doc. #29. For the reasons set forth below, defendant Riffo's Motion for Summary Judgment is **GRANTED**; defendant Downey's Motion for Summary Judgment is **DENIED**.

## I.   BACKGROUND

The following facts are derived from the parties' submissions pursuant to Local Rule 56(a) and the affidavits, declarations, and exhibits attached thereto.

At the time of the incident giving rise to this claim, both defendants were employed by DOC. See Doc. #29-2 at 1, ¶1; Doc. #29-2 at 2, ¶11; Doc. #32 at 4, ¶1, ¶11.

On November 27 or 28, 2017,[3] plaintiff spoke with Downey, and "claimed that he was not supposed to be receiving hot dogs in his high fiber tray." Doc. #29-2 at 3, ¶22; Doc. #32 at 6, ¶22. The details of that conversation are disputed, but on November 28, 2017, plaintiff submitted an Inmate Request Form addressed to defendant Riffo stating:

> Today and for the last 2 Tuesdays, on first shift (feedback) I'm getting served regular trays with extra veggies, however that is contrary to the revision of the

---

[3] Downey states that this conversation occurred on November 28, 2017. See Doc. #29-4 at 3, ¶13. Plaintiff states that this conversation occurred on November 27, 2017. See Doc. #32-1 at 332, ¶24. The Court notes that November 27, 2017, was a Tuesday, and plaintiff's Inmate Request Form specifically refers to the food he was being served on Tuesdays. This dispute does not affect the Court's analysis at this stage.

2

> high fiber diet as of Oct. 2017. On 11-27-17 I received
> hot dogs for lunch in which I notified Downey, who said
> I get hot dogs which is incorrect. The continuance of
> Downey and Gardner's practice of depriving me of A.D.
> 10.18(3) [desecrates] my medical condition. At your
> convenience may we discuss this, and a high fiber menu.

Doc. #32-1 at 217. Riffo did not respond to this request. See
id. at 330, ¶16.

On December 4, 2017, defendant Downey issued a CN100101:
Offender Work Performance report, rating plaintiff's attendance,
initiative, and productivity as fair and his attitude and
overall performance as poor. See Doc. #29-6 at 2. The form
states:

> On 12-3-2017 I CFSS2 Downey, received an inmate request
> form. In said form, Inmate Green, C #320094 sated that
> supervisors Downey and Gardner had deprived him of A.D.
> 10.18 due to his receiving of hot dogs during a meal
> which consisted in part of hot dogs, due to the fact
> that the high fiber diet menu had been revised during
> October of 2017. Inmate Green #320094 continued to state
> that this protein portion of the meal along with these
> supervisors statements were "incorrect." Upon further
> review of the OCI therapeutic diet menu, this supervisor
> noted that hot dogs were in fact the proper protein of
> said inmate's meal of the day. Due to giving false
> statements to and about correctional staff members in
> regards to depriving said inmate of A.D. 10.18 by serving
> an in proper protein portion of high fiber diet, Inmate
> Green, C #320094 is seen to be no longer necessary as a
> worker in the Osborn kitchen. His is to be fired with
> malice. Do not rehire for kitchen. End of report.

Doc. #29-6 at 2; Doc. #32-1 at 268 (sic). Plaintiff refused to
sign this form. See id.

On that same date, plaintiff completed a second Inmate
Request Form addressed to defendant Riffo, stating:

> Mr. Riffo in the aftermath of me complaining about my therapeutic diet not being properly met per A.D. 10.18(9), and me questioning Downey if hot dogs are a part of my diet, today at about 9:30 am Downey arrived at my housing unit with a performance eval form with reasons described pertaining to the hot dog incident last Monday when I was not on duty. This clear evidence shows that Downey retaliation against me for naming him in an inmate request[.]

Doc. #32-1 at 218 (sic). Defendant Riffo did not respond to plaintiff's December 4, 2017, request. See id. at 330, ¶16.

On December 8, 2017, plaintiff submitted an Inmate Request Form to the Unit Administrator stating:

> On or about 11-28-17 I sent CN9601 to Riffo informing him that on Tuesdays 1st shift, during feedback, I'm not receiving my therapeutic diet pursuant to A.D. 10.18(3)D, also in CN9601 I told Riffo that Kitchen Sup. Downey gave me hot dogs on 11-27-17, that I thought to be in contrast with my diet, only to find out that it is in accordance with my diet. So on 12-4-17, Kitchen Sup, Downey arrived at about 9:30 am to my housing unit issuing me a CN100101 form, with his factual basis being solely about the hot dog situation in my CN9601. ... My use of CN9601 to address a concern to Riffo led to Downey retaliating by filing CN100101 about hot dogs in violation of A.D. 2.17(B)15 and first amendment.

Id. at 243-44 (sic). On January 3, 2018, Warden Faneuff responded to plaintiff, stating: "After reviewing the facts I concur with the actions taken. Your argumentative and false statements to kitchen staff warrant your removal from the kitchen." Id. at 243.

On January 10, 2018, plaintiff filed a Level 1 grievance challenging Warden Faneuff's response to his December 8, 2017, inmate request. See id. at 247-48. On March 12, 2018,

Correctional Officer Kopacz sent plaintiff a letter that stated, inter alia: "[I]t was determined that although you may have handled the matter regarding your diet a little brash, Warden Faneuff and I agree that it didn't warrant a work evaluation of an overall poor. Your actions were not job related. Therefore, reclassification without malice was appropriate." Id. at 264. Plaintiff was advised that "the work report ... alone would not be used to negatively impact [his] Classification status or his Ability to earn RREC time."[4] Id. With these conditions, plaintiff "withdrew both administrative remedies[.]" Id.

On March 16, 2018, plaintiff's grievance was denied by District Administrator Edward Maldonado with the reasoning that his "allegation of staff misconduct/retaliation [could not] be substantiated." Id. at 247. On March 28, 2018, plaintiff filed a Level 2/3 grievance, alleging that the Level 1 reviewer was "biased[]" and "allowing [him] to be retaliated against." Id. at 251. On April 11, 2018, plaintiff's Level 2/3 grievance was

---

[4] The Court takes judicial notice that "RREC" references the "Risk Reduction Earned Credit Program[,]" which permits inmates at Connecticut prisons to earn three to five days per month off of their sentence "as an incentive to promote good behavior and program participation among offenders." Risk Reduction Earned Credit: Effective February 1, 2016, CONNECTICUT STATE DEPARTMENT OF CORRECTION, https://portal.ct.gov/DOC/Miscellaneous/Risk-Reduction-Earned-Credit-NEW-2-1-2016 (last visited December 27, 2021).

denied, and plaintiff was advised that his "Administrative Remedies are exhausted." Id.

## II.   **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002). The moving party may discharge this burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could

reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH*,* 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

## III. <u>DISCUSSION</u>

Defendants move for summary judgment on several bases: "1) Plaintiff cannot demonstrate a retaliation claim; 2) Defendant Riffo does not have direct involvement; 3) Defendant Riffo does not have supervisory liability; 4) the Defendants are entitled to the protections of qualified immunity and [5]) the Plaintiff is not entitled to compensatory damages." Doc. #29 at 1.[5] The Court herein addresses only those arguments necessary to the resolution of the motion.

### A.   <u>Defendant Riffo -- Personal Involvement</u>

Defendant Riffo moves for summary judgment on the basis that plaintiff has not produced evidence indicating that he had

---

[5] Defendants do not make any argument that plaintiff failed to exhaust his remedies under the Prison Litigation Reform Act ("PLRA"). Plaintiff has placed in evidence a letter dated March 12, 2018, stating that plaintiff "withdrew both administrative remedies" relating to the "poor work report generated by CFSS2 Downey on 12/4/17[.]" Doc. #32-1 at 264. Defendants were aware of the March 12, 2018, letter, see Doc. #29-1 at 12 (citing letter), but have not asserted that the withdrawal described therein means that plaintiff failed to exhaust his administrative remedies. Notably, plaintiff has also provided an Inmate Grievance Appeal Form dated April 11, 2018, stating: "[Y]our level three appeal is denied and Your Administrative Remedies are exhausted." Doc. #32-1 at 251.

"direct involvement" in the alleged retaliation. Doc. #29-1 at 9. The Court agrees.

When bringing a claim pursuant to §1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Aschroft v. Iqbal, 556 U.S. 662, 676 (2009)). An alleged constitutional "violation must be established against the supervisory official directly[]" and cannot be based on supervisory liability. Id. In other words a supervisory official is not personally involved in the violation of a plaintiff's constitutional rights simply "by reason of [the official's] supervision of others who committed the violation." Id. at 619.[6]

Plaintiff has submitted an Inmate Request Form dated December 4, 2017, addressed to defendant Riffo, stating:

> Mr. Riffo in the aftermath of me complaining about my
> therapeutic diet not being properly met per A.D.
> 10.18(9) and me questioning Downey if hot dogs are a
> part of my diet, today at about 9:30 am Downey arrived
> at my housing unit with a performance eval form with
> reasons described pertaining to the hot dog incident
> last Monday when I was not on duty. This clear evidence

---

[6] The parties' briefing for this motion was completed prior to the issuance of the Second Circuit's opinion in Tangreti, and they therefore rely on Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995). See Doc. #29-1 at 7-9; Doc. #32 at 56. However, after Tangreti, the test set forth in Colon for demonstrating indirect personal involvement of a supervisory defendant is no longer controlling. See Tangreti, 983 F.3d at 615-18 (citing Colon, 58 F.3d at 873).

shows that Downey retaliated against me for naming him
in an inmate request regarding my -->

Doc. #32-1 at 221.[7]

"The fact that a prisoner sent a letter or written request
to a supervisory official does not establish the requisite
personal involvement of the supervisory official." Young v.
Choinski, 15 F. Supp. 3d 172, 189 (D. Conn. 2014).

The form is not signed by defendant Riffo. See Doc. #32-1
at 221. As plaintiff concedes, "Riffo did not respond to
plaintiff's request[.]" Doc. #32 at 38; see also Doc. #32-1 at
225 ("Mr. Riffo is not responding to my CN9601, requesting
reinstatement of my job immediately[.]"); Doc. #32-1 at 232
("CN9601 isn't attached because Kitchen Manager Riffo didn't
respond.").

"[A] defendant's mere receipt of a letter or grievance,
without personally investigating or acting thereon, is
insufficient to establish personal involvement. Personal
involvement will be found, however, where a supervisory official
receives and acts on a prisoner's grievance or otherwise reviews
and responds to a prisoner's complaint." Alvarado v. Westchester
Cnty., 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (citations and
quotation marks omitted).

---

[7] After the "my" there is an arrow, suggesting that the text
continues, but no second page is provided.

In his declaration in support of the motion for summary judgment, defendant Riffo avers that he "was not aware Downey had issued" the poor performance evaluation to plaintiff, and that he "was not consulted on whether or not to issue" it. Doc. #29-3 at 3, ¶10. Defendant Downey confirms this, stating: "I issued the [evaluation] based on the Plaintiff's actions, prior to doing so I did not consult or inform Riffo that I was doing so." Doc. #29-4 at 4, ¶28. The poor performance evaluation bears only the signature of Downey. See Doc. #32-1 at 224.

Plaintiff has not offered any evidence to rebut these declarations establishing that Riffo did not have a role in Downey's actions. To the contrary, the December 4, 2017, Inmate Request Form directed to defendant Riffo suggests that plaintiff believed Riffo to be unaware of Downey's actions. See Doc. #32-1 at 221. "For purposes of Section 1983 ..., personal involvement cannot be established based on the receipt of a letter or grievance. Likewise, allegations that an official ignored a prisoner's letter or grievance, is insufficient to establish personal liability for purposes of section 1983." Smith v. Conn. Dep't of Corr., No. 3:05CV00960(HBF), 2007 WL 678549, at *4 (D. Conn. Mar. 1, 2007) (citations and quotation marks omitted).

Plaintiff bears the burden of establishing the personal involvement of each defendant in the unconstitutional retaliation. He has failed to present any evidence suggesting

that Riffo was involved in the decision to issue him a poor performance evaluation, or in the termination of plaintiff from his kitchen job. Defendants have provided unrebutted evidence that Riffo was not involved in these actions. Accordingly, summary judgment is **GRANTED** as to defendant Riffo.

B.    **Defendant Downey -- First Amendment Retaliation**

Defendants assert that plaintiff is unable to establish a retaliation claim because the "poor work report was properly issued." Doc. #29-1 at 4. Plaintiff responds that he "establish[es] a claim of retaliation, as the poor work report he was issued by defendant Downey was not work related ... and did not warrant a work evaluation of an overall poor." Doc. #32 at 38.

A district court must "'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official -- even those otherwise not rising to the level of a constitutional violation -- can be characterized as a constitutionally proscribed retaliatory act.'" Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015) (quoting Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003)). Thus, the Court must ensure that a retaliation claim brought by an inmate is "supported by specific and detailed factual allegations, not

11

stated in wholly conclusory terms." Id. (citation and quotation marks omitted).

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (citation and quotation marks omitted).

1.   Protected Speech or Conduct

Plaintiff has met his burden with respect to the first element, and defendants make no argument to the contrary. Plaintiff has a constitutionally protected right to be free from retaliation as a result of his filing of a grievance. See Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996) ("This court has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under §1983."). The speech or conduct at issue was therefore protected.

2.   Adverse Action

As to the second element, "adverse action on the part of the defendants" is defined as conduct "that would deter a prisoner of ordinary firmness from vindicating his or her

constitutional rights through the grievance process and the courts[.]" Gill, 389 F.3d at 384. "A job reassignment or termination can under certain circumstances constitute adverse action necessary to support a claim of retaliation." Vega v. Lareau, No. 9:04CV00750(GTS)(ATB), 2010 WL 2682307, at *8 (N.D.N.Y. Mar. 16, 2010), report and recommendation adopted, 2010 WL 2682289 (N.D.N.Y. July 2, 2010). It is undisputed that plaintiff was fired from his kitchen job "with malice." Doc. #29-6 at 2; see also Doc. #32-1 at 264. This is sufficient to constitute "adverse action" at the summary judgment stage. See Walker v. Senecal, No. 9:20CV00082(DNH)(CFH), 2021 WL 3813081, at *9 (N.D.N.Y. July 19, 2021), report and recommendation adopted, 2021 WL 3793771 (N.D.N.Y. Aug. 26, 2021); Logan v. Graham, No. 9:18CV00291(DNH)(ML), 2019 WL 8015209, at *13 n.19 (N.D.N.Y. Nov. 26, 2019), report and recommendation adopted, 2020 WL 871197 (N.D.N.Y. Feb. 21, 2020); Casey v. Pallito, No. 5:12CV00284(JMC), 2015 WL 13730672, at *10 (D. Vt. Sept. 22, 2015), report and recommendation adopted, 2016 WL 96157 (D. Vt. Jan. 7, 2016) ("Neither does the Constitution tolerate termination from prison employment in retaliation for the exercise of such rights.").

  3.  Substantial or Motivating Factor

As to the third element, plaintiff "bears the burden of showing that 'the protected conduct was a substantial or

13

motivating factor' in the prison officials' disciplinary decision." Holland v. Goord, 758 F.3d 215, 225 (2d Cir. 2014) (quoting Graham, 89 F.3d at 79).

Defendants do not argue that the filing of the grievance was not a motivating factor in the termination of plaintiff's kitchen job. Rather, defendants argue that "there was a valid basis for [plaintiff's] removal from his kitchen work assignment[.]" Doc. #29-1 at 7. Once a plaintiff shows that there is a causal connection between protected speech and an adverse action, the burden shifts to defendants to "show by a preponderance of the evidence that they would have disciplined the plaintiff even in the absence of the protected conduct." Graham, 89 F.3d at 79 (citation and quotation marks omitted). Plaintiff's "version of events would be insufficient as a matter of law even if true (even if the defendants were retaliating against protected conduct) if there were proper, non-retaliatory reasons for his punishment." Id. at 81.

Defendants contend:

After consulting the diet formulary for high fiber diets, Downey determined that the food provided to the Plaintiff, which included the hot dogs, was [indeed], part of his high fiber diet. He discussed this with the Plaintiff. A week later, the Plaintiff asserted the same complaint in an inmate request form, after he had been told that the formulary did include hot dogs. The Plaintiff's knowledge for one week prior to filing his complaint that the high fiber diet included hot dogs, demonstrates that he was being untruthful when he filed the inmate request form. This is equivalent to filing a

14

> report with false information. Filing a report with
> false information is an offense that could warrant
> discipline of the Plaintiff. On this basis, Downey felt
> placing the Plaintiff in a position of trust was no
> longer warranted and could jeopardize the safety of DOC
> personnel and others. As a result, he issued the CN100101
> outlining the false report submitted by the Plaintiff
> and proceeded to fire him from his position in the
> kitchen.

Id. at 6 (citations omitted). The Court finds that there is at
the very least a genuine dispute of material fact as to whether
plaintiff was in fact being "untruthful" in the November 28,
2017, grievance. That grievance reflects that plaintiff brought
his concerns to Downey's attention, that Downey offered an
explanation, and that plaintiff did not believe Downey was
correct in his interpretation of the relevant directive. See
Doc. #32-1 at 217. Under defendants' theory, plaintiff's claims
in the November 28, 2017, Inmate Request were lies, but a
reasonable jury could easily conclude that they represented a
mere difference of opinion. At a minimum, this possibility
prevents entry of summary judgment in Downey's favor.

The Court further observes that plaintiff has provided
evidence that Downey's termination of his employment "with
malice" was found not to be justified under the circumstances.
On March 12, 2018, a letter was sent to plaintiff from DOC
stating:

> Upon completion of an inquiry regarding inquiry
> regarding an overall poor work report generated by CFSS2
> Downey on 12/4/17, it was determined that although you

> may have handled the matter regarding your diet a little
> brash, Warden Faneuff and I agree that it didn't warrant
> a work evaluation of an overall poor. Your actions were
> not job related.

Doc. #32-1 at 264. Plaintiff's "allegations of retaliation are further supported by the fact that" Downey's actions "were subsequently found to have been unjustified." Bennett v. Goord, 343 F.3d 133, 138 (2d Cir. 2003); see also Gayle v. Gonyea, 313 F.3d 677, 683 (2d Cir. 2002).

At the summary judgment stage, defendants must "proffer an alternative basis for disciplining [plaintiff] that would apply to him even if his version of events were true." Graham, 89 F.3d at 81 (emphasis added). If plaintiff's version of events is true, then the statements in the November 28, 2017, Inmate Request Form are truthful, and Downey had no basis to terminate him for the cited reasons. Accordingly, summary judgment in favor of Downey is not appropriate.

### C.   **Defendant Downey -- Qualified Immunity**

Downey further contends that he is entitled to summary judgment on qualified immunity grounds. See Doc. #29-1 at 9-13.

"Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his

conduct did not violate plaintiff's rights." Mandell v. Cnty. of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003).

A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (citation and quotation marks omitted). For a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

The Second Circuit "has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under §1983." Graham, 89 F.3d at 80 (citing Franco v. Kelly, 854 F.2d 584 (2d Cir. 1988)). "The right to petition government for redress of grievances -- in both judicial and administrative forums -- is among the most precious of the liberties safeguarded by the Bill of Rights." Id. (citation and quotation marks omitted). That right has been clearly established by Second Circuit law for decades. Defendants do not dispute that, as of November 27, 2017, plaintiff's right to be free from retaliation for filing a grievance was clearly established. Accordingly, the Court proceeds to consider "whether the officer had fair notice that [his] conduct was unlawful[.]" Brosseau v. Haugen, 543 U.S. 194,

198 (2004). "[T]he critical question is whether it was objectively reasonable for [Downey] to believe that [he was] not committing" a violation of plaintiff's First Amendment right to be free from retaliation. Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486, 523 (E.D.N.Y. 2011). "[I]f [Downey] did in fact intentionally retaliate against plaintiff because of his First Amendment activity, [he] would not be protected by qualified immunity." Id.

Downey argues that his actions were objectively reasonable because he "had direct knowledge that the Plaintiff was being untruthful when he filed an inmate request form indicating that the Plaintiff had not received a special diet meal." Doc. #29-1 at 11. But, as defendants concede in their motion, the basis for plaintiff's asserted "knowledge" that the meal he had received was the proper one was based on Downey's own assessment: "After consulting the diet formulary for high fiber diets, **Downey determined** that the food provided to the Plaintiff, which included in the hot dogs, was indeed, part of his high fiber diet." Id. at 6 (emphasis added). Plaintiff disagreed with Downey's determination, and he therefore filed an Inmate Request form stating: "I received hot dogs for lunch in which I notified Downey, who said I get hot dogs which is incorrect." Doc. #32-1 at 217. Assuming that it is possible to view this as "being

untruthful" rather than expressing disagreement, that is certainly not the only reasonable interpretation.[8]

A genuine issue of material fact exists as to whether Downey terminated plaintiff from his job based on false statements or retaliation, and whether the proffered legitimate reasons for the termination were objectively reasonable. On the facts presented, "a rational jury could find that the [discipline] was imposed in retaliation" for plaintiff's November 28, 2017, complaint against Downey in the Inmate Request Form. Frierson v. Reinisch, 806 F. App'x 54, 57 (2d Cir. 2020). Thus, summary judgment is precluded. See Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of New York, 746 F.3d 538, 545 (2d Cir. 2014) ("The existence of that

---

[8] The Court notes that after these events transpired, Downey filed a request that plaintiff to be transferred to a different facility. Downey claimed that plaintiff's grievance against him for the termination constituted "a direct order from an inmate to a staff member to inflict disciplinary remedies upon another staff member which cannot be tolerated[.]" Doc. #32-1 at 267. Downey's interpretation of that grievance was based solely on plaintiff's use of the word "warrant," saying the "behavior displayed by Downey warrant discipline." Id. (sic). Downey insisted that "warrant" in this context must mean "certification or sanction as given by a superior." Id. This is a surprising interpretation, especially given that Downey used a definition under which "warrant" would be a noun, while plaintiff clearly used "warrant" as a verb, and the most natural meaning of the word in that context was "merit," or "deserve." While this evidence is not necessary to the Court's determination, and the outcome would be the same without it, it does provide additional insight into the reasonableness of Downey's assessments of plaintiff's actions.

genuine dispute of material fact with respect to defendants'
violations of Royal Crown's First Amendment and substantive due
process rights precludes the entry of summary judgment on behalf
of defendants unless they can show that their action was
objectively legally reasonable or that the rights they violated
were not clearly established."); Bonilla v. United States, 357
F. App'x 334, 335 (2d Cir. 2009) ("[I]f there are factual
disputes that bear directly upon whether it was objectively
reasonable for an official to believe that he was acting
lawfully, these disputes must be resolved by a jury before the
legal question can be addressed."). Accordingly, Downey is not
entitled to summary judgment on the basis of qualified immunity.

### D.   **Compensatory Damages**

Plaintiff seeks both compensatory and punitive damages for
the violations of his First Amendment rights. See Doc. #1-1 at
21. Defendants conclude their summary judgment argument with a
claim that plaintiff is "precluded from compensatory damages[]"
because "he has failed to establish any physical injury"
resulting from Downey's actions. Doc. #29-1 at 14. Plaintiff
responds that he is seeking compensatory damages for the loss of
his "constitutional liberty interest[]" rather than for "mental
or emotional injury[.]" Doc. #32 at 74.

Defendants argue:

> Consistent with the PLRA, plaintiffs are required to demonstrate physical injury. "Section 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury." Thompson v. Carter, 284 F.3d 411, 417 (2d Cir. 2002).

Doc. #29-1 at 13. However, Thompson also states: "Because Section 1997e(e) is a limitation on recovery of damages for mental and emotional injury in the absence of a showing of physical injury, it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." Thompson, 284 F.3d at 416. Plaintiff could therefore potentially recover compensatory damages for his lost wages, and for the actual injury to his First Amendment rights.

"[E]ven if [plaintiff] is unable to establish that any of the injuries complained of in this action stemmed from an incident in which he suffered physical injuries, [he] may still recover damages for injuries to his First Amendment rights, as well as nominal and punitive damages for any other constitutional violations." Toliver v. City of New York, 530 F. App'x 90, 93 n.2 (2d Cir. 2013) (citing Thompson, 284 F.3d at 416). See also Lipton v. Cnty. of Orange, NY, 315 F. Supp. 2d 434, 457 (S.D.N.Y. 2004) ("[A] First Amendment deprivation presents a cognizable injury standing alone and the PLRA does

21

not bar a separate award of damages to compensate the plaintiff for the First Amendment violation in and of itself." (citations and quotation marks omitted)) (collecting cases); <u>Sheppard v. Roberts</u>, No. 3:20CV00875(VAB), 2021 WL 3023090, at *3-4 (D. Conn. July 16, 2021) (acknowledging that compensatory damages may be sought for loss of a constitutional liberty interest, particularly in the First Amendment context).

As acknowledged by defendants in their motion, "[h]ere, the constitutional violation before the court is one of retaliation in violation of the Plaintiff's First Amendment Rights." Doc. #29-1 at 14. Plaintiff's request for compensatory damages could be construed to seek relief for a cognizable injury due to a violation of his First Amendment rights by Downey. Such damages are distinct from those recoverable for any physical, emotional, or mental injury, and would not be barred by §1997e(e). Accordingly, summary judgment on this issue is denied.

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, defendants' motion for summary judgment is GRANTED, in part, as to defendant Riffo, and DENIED, in part, as to defendant Downey.

The Clerk shall terminate defendant Riffo in this action. Judgment will enter in favor of defendant Riffo.

This case will proceed to trial as to defendant Downey. A separate Joint Trial Memorandum Order will enter.

It is so ordered this 10th day of January, 2022, at New Haven, Connecticut.

                                   ___/s/_____
                                   HON. SARAH A. L. MERRIAM
                                   UNITED STATES DISTRICT JUDGE